Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4282 | **DATE** | 2/27/2002 |
| **CASE TITLE** | Asbury vs. Walgreens | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Before the court is Defendant's motion for summary judgment [22-1]. For the reasons stated in the attached opinion and order, the motion is granted. Case terminated. See attached order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 0 1 2002 | |
| | Notified counsel by telephone. | date docketed | 38 |
| ✗ | Docketing to mail notices. | CDY | |
| ✗ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | 02 FEB 28 AM 10:48 date mailed notice | |
| | | Date/time received in central Clerk's Office mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**MAR 0 1 2002**

| | |
|---|---|
| KIMBERLY ASBURY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 99 C 4282 |
| WALGREEN CO., | ) HONORABLE CHARLES R. NORGLE ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

CHARLES R. NORGLE, SR., District Judge

Before the court is Defendant's motion for summary judgment [22-1]. For the following reasons, the motion is granted.

**I. BACKGROUND**[1]

The distillate of Plaintiff, Kimberly Asbury's, complaint is that her employment with Defendant, Walgreens, was terminated in retaliation for complaining about sexual harassment in violation of Title VII, 42 U.S.C. § 2000e-3(a). In response, Walgreens contends that Asbury was terminated as a result of her lack of attendance.

Walgreen's employment policy provides that an employee can be terminated for multiple infractions. The policy states that the first infraction will result in an oral warning, and each subsequent infraction will result in a written warning. When an employee reaches three written disciplinary warnings, including a final warning, the employee will be terminated.

Asbury began her employment with Walgreens in April of 1998 at a store located at Kimball and Belmont in Chicago. The manager of the Belmont location was George Quijano

---

[1] The court takes the facts from the parties' Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

("Quijano"), the father of Asbury's children. In November of 1998, Asbury negotiated an agreement where she could also work at another Walgreen's location on Western Avenue in Chicago.

Asbury's supervisor at the Western Avenue store was John Nicholas ("Nicholas"), the store manager. Nicholas was in charge of creating work schedules and did so approximately two weeks in advance. Nicholas also handled the day-to-day operations of the Western Avenue location, including disciplinary matters.

On December 18, 1998 and January 15, 1999, Asbury was a "no call/no show" for her scheduled shifts at the Western Avenue store. According to Walgreens, Nicholas gave Asbury an oral warning for the December 18th absence, and a written disciplinary warning for the January 15th absence. Asbury denies that Nicholas gave her either warning.

Asbury asserts that on February 7, 1999, she was subjected to sexual harassment by a co-worker, Noel Jacobs ("Jacobs"). Asbury claims that on February 7, 1999 Jacobs made sexually aggressive gestures, as he suggested that he and Asbury engage in various acts of sexual intercourse and fellatio. On February 10, 1999, Asbury approached Nicholas and informed him of this incident. Asbury claims that in response to her complaint, Nicholas told her that he did not "want to fucking hear it." Nicholas denies making this statement, and responds that Asbury communicated to him only that Jacobs had made lewd comments. In any event, it is undisputed that Nicholas met with Jacobs and informed him of Walgreens' sexual harassment policy, and issued Jacobs an oral warning.

According to Walgreens, on February 14, 1999 Asbury was again a "no call/no show" for her shift. Walgreens claims that Nicholas prepared a second written disciplinary warning and presented it to Asbury. Asbury denies that she received any such warning.

2

On February 17, 1999, Asbury approached Nicholas to follow up on what action had been taken in response to her complaint about Jacob's lewd comments, and was told that the situation had been taken care of. The parties dispute whether Asbury asked for additional information or steps to be taken. It is undisputed, however, that Asbury encountered no further incidents of sexual harassment from Jacobs after Nicholas warned Jacobs about Jacobs' behavior.

On March 9, 1999, Walgreens claims that Asbury was again a "no call/no show." On March 13, 1999, Nicholas prepared a third and final written disciplinary notice for Asbury, and presented it to her on March 15, 1999, thereby terminating Asbury's employment with Walgreens.

After Asbury's termination, she contacted Walgreens' corporate office to report the incident of alleged sexual harassment and her termination, alleging that she never received the one oral warning and three written disciplinary warnings. Apparently unsatisfied with any action from Walgreens, Asbury filed a complaint with the Illinois Department of Human Rights on April 1, 1999. Asbury also notified the Equal Employment Opportunity Commission ("EEOC"), and was issued her Right to Sue letter on May 19, 1999.

On June 29, 1999, Asbury filed the present suit against Walgreens seeking relief on a claim of retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a). Asbury denies that she was a "no call/no show" on all of the above-mentioned dates, and further denies that she received the warnings for those alleged absences. Asbury claims that the real reason for her termination was Walgreens' retaliation against her for reporting an incident of sexual harassment. Asbury also contends that other actions were taken against her in retaliation for reporting the incident of sexual harassment, such as a reduction in her hours, removal of a telephone from the cash

register area where she worked, an admonition that she could not receive personal calls at work, and refusal to let her eat or drink while working at the cash register. Walgreens now moves for summary judgment, arguing that it terminated Asbury for her repeated absences.

## II. DISCUSSION

### A. Standards for Summary Judgment:

Summary judgement is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There must be a genuine dispute as to a material fact, thus "[t]he mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion." Vukadinovich v. Board of School Trustees of North Newton School Corp., -- F.3d --, No. 01-1625, 2002 WL 75883, at *4 (7th Cir. January 22, 2002). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c); see also Vukadinovich, 2002 WL 75883, at *4 (stating that the non-moving party will successfully oppose summary judgment only when it presents "definite, competent evidence to rebut the motion"); Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999) (stating that the non-moving party must raise more than a mere scintilla of evidence to show a genuine triable issue of material fact). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make a choice of inferences. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996) (same). The choice between reasonable inferences is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

4

At summary judgment a defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries, Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). The plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. Navarro, 117 F.3d at 1030.

**B. Retaliation Claims:**

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff asserting a retaliation claim can proceed by either producing direct evidence of discrimination, or indirectly through the burden shifting analysis of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). See Stone v. City of Indianapolis Public Utilities Div., – F.3d –, No. 01-3210, 2002 WL 234239, at * 3 (7th Cir. Feb. 19, 2002); DeLuca v. Winer Industries, 53 F.3d 793, 797 (7th Cir. 1995). Under the McDonnell-Douglas method of proving discrimination, a plaintiff must first establish a prima facie case of retaliation. See Adusumilli v. City of Chicago, 164 F.3d 353, 362 (7th Cir. 1998). A prima facie case of retaliation exists when: (1) the employee engaged in statutorily protected expression, (2) the employee suffered an adverse action by the employer, and (3) there is a casual link between the protected expression and the adverse action. See id.

In defining what constitutes an adverse employment action, the Seventh Circuit has stated:

> We have broadly defined an adverse employment action in this circuit. It is not limited solely to loss or reduction of pay or monetary benefits, but can encompass other forms of adversity. Nevertheless, not everything that

5

> makes an employee unhappy is an actionable adverse action. Negative performance reviews, a change in job title, an increased travel distance to work, do not by themselves qualify. Neither does the loss of a telephone or cubicle. To be actionable, there must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. In other words, the adverse action must materially alter the terms and conditions of employment.

Stutler v. Illinois Dept. of Corrections, 263 F.3d 698, 703 (7th Cir. 2001) (internal citations omitted).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate business reason for the termination. See Adusumilli, 164 F.3d at 362. If the defendant do so, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason is pretextual. See id.; see also Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir.1999) (citing McDonnell Douglas, 411 U.S. at 804); Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000) (same). Despite these shifting burdens of production, the ultimate burden of persuasion always remains with the plaintiff. See Adusumilli, 164 F.3d at 362.

The focus of the pretext inquiry is whether the defendant's articulated legitimate business reason was honest, not whether it was accurate, wise, or well-considered. See Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). In short, pretext means a lie, "[a]nd without proof of a lie, no inference of discriminatory motive can be drawn." Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 602 (7th Cir. 2001); see also Jackson, 176 F.3d at 983 (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995)) ("Pretext in this context means 'a lie, specifically a phony reason for some action.'"). A plaintiff may establish pretext either "directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or

indirectly by evidence that the employer's explanation is not credible." Jackson, 176 F.3d at 983 (citation omitted). If the plaintiff elects to prove pretext indirectly, this may be done "by demonstrating that the [employer's] reasons are factually baseless, were not the actual motivation for the discharge, or were insufficient to motivate the discharge." Id. With these principles in mind, the court examines Asbury's claims of retaliation.

### C. Asbury's claim of retaliation:

Asbury asserts that claims that she was terminated, and suffered other forms of retaliation, in response to her reporting the sexual harassment of Jacobs. The court finds that all of Asbury's claims of retaliation fail as a matter of law, and addresses each claim in turn.

#### 1. Termination:

As for her terminations, the parties dispute whether Asbury has evidence of a prima facie case of retaliation. The court, however, assumes a prima facie case and proceeds directly to the issue of pretext. See Jackson, 176 F.3d 971 at 982 (assuming that plaintiff met burden of establishing pretext and deciding the matter on pretext issue). The court further notes that it proceeds directly to the issue of pretext because viewing the evidence in the light most favorable to Asbury, she would likely establish a prima facie case on the termination aspect of her retaliation claim, particularly since her termination occurred within a month of her sexual harassment claim. Cf. Adusumilli, 164 F.3d at 363 ("It is settled in this Circuit that, 'a plaintiff may establish ... a [causal] link [between protected expression and adverse action] through evidence that the discharge took place on the heels of protected activity.'") (citation omitted); Dey v. Colt Const. & Development Co., 28 F.3d 1446, 1458 (7th Cir. 1994) (stating that "[g]enerally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity"); but cf. Stone, – F.3d –, No. 01-3210, 2002 WL 234239, at *

7

3 (stating that "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue").

Assuming that Asbury presents a prima facie case, the burden shifts to Walgreens to articulate a legitimate business reason for the termination. Walgreens maintains that Asbury's employment was terminated due to her poor attendance. Termination for poor attendance is a legitimate, non-discriminatory reason for termination. Cf. Wade v. Lerner New York, Inc., 243 F.3d 319, 325 (7th Cir. 2001) (finding plaintiff's tardiness was a legitimate, nondiscriminatory reason for failing to promote plaintiff). As proof of Walgreen's belief that Asbury missed four scheduled work days, Walgreens points to its records indicating that Asbury was scheduled to work on December 18, 1998, January 15, 1999, February 14, 1999 and March 9, 1999, and that Asbury was absent on each of these days without a valid excuse. In accordance with its employment policy, Walgreens gave Asbury one oral warning and three written disciplinary warnings, including a final warning, and then she was terminated. Walgreens claims that after each absence, a warning was issued to Asbury, which referenced the previous absences and indicated what consequences would follow if any other absences occurred. Nicholas prepared the third and final written disciplinary notice for Asbury on March 13, 1999 and presented it to her on March 15, 1999, thereby terminating Asbury's employment with Walgreens. This evidence demonstrates a legitimate non-discriminatory reason for Asbury's termination, shifting the burden back to Asbury to demonstrate that the proffered reason is pretextual. See Jackson, 176 F.3d at 983.

To demonstrate the need for a trial, Asbury must present evidence that Walgreens' proffered reason is pretextual by showing that the reason is factually baseless, not the actual

8

motivation for the termination, or is an insufficient reason for the termination. See id. Asbury denies that she was absent on any of the above mentioned days, and further denies receiving all of the warnings. Asbury advances three theories in support of her pretext argument: (1) that much of the evidence relied on by Walgreens was fabricated; (2) inconsistencies in the evidence; and (3) isolated statements that Asbury claims exhibit an animosity towards either her directly, or her sexual harassment claim in general. The court addresses each of these in turn.

The gist of the fabricated evidence argument is that for two of the dates which Walgreens claims that Asbury was absent, December 18, 1998 and March 9, 1999, Walgreens' computer-generated timesheets indicate that Asbury was at work. However, there are handwritten notations on employee work schedules prepared by Nicholas indicating that Asbury was absent from work on those days. Based on this discrepancy between the computer-generated timesheets and the handwritten schedule, Asbury concludes that the handwritten documents that are erroneous, and the result of a deliberate fabrication.[2] Asbury fails to support this conclusion with any evidence of her own, not even so much as an affidavit of another co-worker in attendance with Asbury on either of these days to testify that Asbury was in fact at work. At most, the discrepancy may indicate that there was a mistake, either with regard to the computer-generated timesheets or the handwritten schedule. However, a mistaken belief that is honestly believed does not establish pretext. See McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir.1992) (finding that even a mistaken belief, if honestly believed, does not establish pretext); see also Pitasi v. Gartner Group, Inc., 184 F.3d 709, 718 (7th Cir.1999) ("[I]t is not sufficient for the employee to show that his employer fired him for incorrect or poorly

---

[2] Plaintiff filed a motion for default and sanctions based on this allegedly forged evidence, which the court denied in open court.

9

considered reasons. He must establish that the employer did not honestly believe the reasons it gave for terminating him."); Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 890 (7th Cir. 1997) (employer prevails if it "honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless"). Asbury fails to raise more than a scintilla of evidence that Walgreens lied about Asbury's absences. Therefore, Asbury fails to demonstrate pretext on this issue.

Asbury next points to inconsistencies in the evidence in an attempt to demonstrate pretext. These inconsistencies, however, exist only in her own testimony, and do nothing to demonstrate the Walgreens lied about its belief that Asbury failed to appear for her scheduled shifts. For example, concerning the March 9, 1999 absence that resulted in Asbury's termination, Asbury's evidence as to whether she was at work is contradictory. In her EEOC charge, Asbury stated:

> Approximately two weeks after I complained to John Nicholas on February 10, 1999, about the sexual harassment, I was written up for not calling and not showing up for a scheduled shift. However, I did call in and informed John Nicholas that I would not be able to come in because my 3 year old son was ill.

(Pl.'s Compl., Ex. A.) Thus, Asbury told the EEOC that she called Nicholas and told him she would not be present. Asbury's story changed during her deposition, where she testified:

> Q. Do you recall the date that he [Nicholas] claims that you were no call/no show?
> A. I was off on Monday [March 8, 1999] and Tuesday [March 9, 1999]. He [Nicholas] said I didn't come in on Tuesday when it was warehouse day.
> ***
> Q. And you thought you were off that day [March 9, 1999]?
> A. My schedule said I was off.

(Def. Local Rule 56.1(a)(3) App. A, pg. 42.)

> Q. So you did not show up for work on March 9th, but you say it's because you were not scheduled?

10

> A. I was not scheduled.

(Def. Local Rule 56.1(a)(3) App. A, pg. 49.) This version of events changed again in Asbury's response to Walgreen's Local Rule 56.1 Statement of Material Facts, where Asbury contended that "[i]t is irrefutable" that she was in fact at work on March 9, 1999 as indicated by a computer-generated timesheet that indicated that she worked 6.75 hours."

These inconsistencies show only that Asbury has three different versions of what happened on March 9, 1999. They do nothing to demonstrate that Walgreens lied when it said that Asbury was a "no call/no show" on March 9, 1999. Asbury's mutating versions of her attendance on March 9th is not evidence that Walgreens lied when it Asbury was terminated for poor attendance.

Lastly, Asbury points to isolated statements that she contends exhibit an animosity towards her and her sexual harassment claim. In Asbury's Local Rule 56.1 Statements of Material Fact, she contends that after reporting the alleged sexual harassment to Nicholas, he stated that he did not "want to fucking hear it." Walgreens and Nicholas deny this allegation. Assuming arguendo that Nicholas did make the statement, it is uncontradicted that Nicholas promptly met with Jacobs and informed him of Walgreen's sexual harassment policy, and issued Jacobs an oral warning. Cf. Frazier v. Delco Elec. Corp., 263 F.3d 663, 666-68 (7th Cir. 2001) (holding that in a case of co-worker harassment, the employer's Title VII violation does not occur until it fails to take reasonable steps to end the harassment). Furthermore, Asbury testified that after Nicholas' conversation with Jacobs there were no incidents of sexual harassment. Even more importantly, Asbury's own testimony is again contradictory on this point, and belies this argument. In her deposition the following exchange took place:

> Q. Did anyone ever suggest to you that the company was retaliating against you?
> A. No, ma'am.
> Q. Did anybody ever make a comment to you which made you believe that you were being retaliated against?
> A. No.

(Def. Local Rule 56.1(a)(3) App. A, pg. 112-13.) Thus, Asbury herself admits that she has no evidence of hostility towards her sexual harassment claim.

### 2. Reduction in Hours:

Asbury claims that her hours were reduced after she complained about sexual harassment. On this point, Asbury fails to demonstrate a prima facie case of retaliation. Although a reduction in hours may constitute an actionable adverse action, Stutler, 263 F.3d at 703, Asbury has no evidence that her hours were so reduced. Asbury claims that her hours were reduced from approximately 35 hours per week to less than 20 hours per week. The evidence, however, does not support her claim. The evidence demonstrates that Asbury received approximately the same number of hours both before and after she reported the sexual harassment to Nicholas. Asbury never received less than twenty hours per week, with one exception. The one exception occurred in the week of March 3 – 9, 1999, where Asbury worked 7.25 hours at the Western Avenue store managed by Nicholas. However, during the week of March 3 – 9, 1999, Asbury worked 19 hours at the Kimball and Belmont store, which was managed by Quijano, the father of Asbury's children. Thus, during the week of March 3-9, 1999, Asbury worked a total of 26.25 hours. Nicholas and Quijano had previously approved this work arrangement, so that Asbury could work at both locations. This accommodation is hardly evidence of discrimination by Nicholas against Asbury. Asbury will not now be heard to argue that the accommodation is evidence of

retaliation. Therefore, the evidence indicates that Asbury's purported reduction in hours was not an adverse employment action sufficient to establish a prima facie case.

### 3. Trivial Matters:

Finally, Asbury presents a smattering of allegedly adverse actions that she asserts resulted from her report of sexual harassment. Asbury claims that Nicholas removed a telephone from the cash register area where Asbury sometimes worked, told Asbury that she could not eat or drink while working at the cash register, and said that she could not receive personal telephone calls while at work. These inconsequential and entirely legitimate workplace rules do not constitute materially adverse employment actions. See Stutler, 263 F.3d at 703; see also Bell v. Environmental Protection Agency, 232 F.3d 546, 555 (7th Cir.2000) (discussing trivial matters that do not rise to the level of actionable retaliation).

Furthermore, Asbury herself admits, "the last four items, by themselves, are not adverse employment actions." (See Pl. Answer Brief in Opposition of Def.'s Motion for Summary Judgment, p. 7). By referencing "the last four items," Asbury even concedes that her claim that her scheduled work hours were reduced from approximately 35 hours per week to less than 20 hours per week does not constitute a materially adverse employment action.

In sum, the court does not "sit as a superpersonnel department that reexamines an entity's business decision." Stewart, 207 F.3d at 378. Walgreens has proffered a legitimate, non-discriminatory reason for Asbury's termination. Asbury has presented no evidence that a discriminatory reason more likely motivated Walgreens' decision to terminate or that Walgreens' proffered explanation is unworthy of credence. In short, all of Asbury's arguments are "no more than [her] own self-serving interpretations of the incidents or denials that they ever occurred." Nawrot v. CPC International, 277 F.3d 896, 907 (7th Cir. 2002).

13

99C4282

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

ENTER: *Charles Norgle*
CHARLES R. NORGLE, SR.
Judge United States District Court

DATED: *FEBRUARY 27, 2002*